IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE CRIMINAL COMPLAINT OF: JIMMY RAY BROWN | Case No. 6:26-MJ-6122-HAI |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Zachary Yommer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since June 2025. My initial training consisted of an eighteen-week FBI new agent course at the FBI Academy in Quantico, Virginia, where I learned the skills necessary to conduct federal criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits. As a Special Agent, I have experience investigating illegal drug activity, crimes against children, child exploitation, human trafficking, domestic terrorism, international terrorism, and public corruption, as well as other violations of federal law. Prior to the FBI, I was employed by the United States Army and the Department of Defense for nine years working in the counterterrorism and intelligence fields. I am currently assigned to the Pittsburgh Division and stationed at the Huntington Resident Agency in Huntington, West

Virginia. Through my training and experience, including on-the-job discussions with other law enforcement agents, I am familiar with the operational techniques and organizational structure of child pornography distribution networks as well as the traits and characteristics of child pornography collectors and possessors and their use of computers or other electronic and media devices to facilitate the collection, possession, trading, and distribution of child pornography. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because I am submitting this affidavit for the limited purpose of securing a criminal complaint, I have not included every fact known to me concerning this investigation.

**STATUTES UNDER INVESTIGATION**

3. The investigation concerns violations of Title 18, United States Code, 2252(a)(4)(B) relating to matters involving the sexual exploitation of minors.

a. 18 U.S.C. § 2252(a)(4)(B) prohibits any person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

**TECHNICAL TERMS**

4. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Computer: as defined in 18 U.S.C.§ 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility

directly related to or operating in conjunction with such device.

d. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

e. Peer to Peer File Sharing ("P2P"): A free open source software process that allows computer users, utilizing the same file sharing software, to connect to each other and directly access files from one another's computer hard drive. The files to be shared with others across the Internet are selected as shareable by each individual computer user. This action is usually done by the computer user who will place files he/she wishes to share into a specific folder often times titled "Shared Folder". The software only allows remote users to access this "shared folder" and thus prevents access to the rest of the computer hard drives contents. Some examples of peer to peer files sharing software are Napster, Kazaa, Grokster, Gnutella, eMule, Morpheus, Phex, Ares, BitTorrent, etc. Many P2P programs expedite file downloads by allowing users to download pieces of a single identified file from numerous users simultaneously rather than downloading a complete file directly from a single other user.

f. Global Unique Identifier ("GUID"): A unique user identification number or alpha-numeric identifier that is assigned to a user upon each installation of a P2P file-sharing program. A new GUID is created for each new installation of a program and is unique to a single computer or electronic device. Therefore, a GUID allows for the identification of the exact installation of a P2P program and the exact device upon which it was installed.

g. Child Pornography: As defined in 18 U.S.C. § 2256(i), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic,

mechanical, or other means of sexually explicit conduct, where

i. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

ii. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable form, that of a minor engaging in sexually explicit conduct; or

iii. such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

h. Sexually Explicit Conduct: as defined in 18 U.S.C. § 2256(2)(A)(i-v), includes actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

i. Child Erotica: Materials or items that are sexually arousing to persons having a sexual interest but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

j. Visual Depiction: As defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disk or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

k. SHA-1 ("Secure Hash Algorithm") or "Hash Value": Algorithms used for computing a "condensed

representation" of a data file. The "condensed representation" is of fixed length and is known as a "hash value" or "fingerprint." These algorithms are useful in that it is considered computationally infeasible to produce two different data files having the same hash value. This uniqueness enables the hash value to act as a "fingerprint" of the data file, opening the possibility of using this technology for issues like data integrity and comparison checking. For instance, when one downloads or receives a file, one can use SHA-1 to guarantee that you have the correct, unaltered file by comparing its hash value with the original, as any alteration to the original, however small, would generate a different SHA-1 hash value. Thus, you are essentially verifying the file's integrity.

## BITTORRENT PEER TO PEER FILE SHARING

5. P2P file sharing is a method of communication available to Internet users using special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. BitTorrent, one type of P2P software, sets up its searches by keywords typically on "torrent" websites. BitTorrent programs are typically free to download and used for the exchange of files between computer users.

6. The results of a keyword search are displayed to the

user. The website does not contain the files being shared, only a file referred to as a "torrent." The user then selects a .torrent file(s) from the results for download. This .torrent file contains instructions on how a user can download the file(s) referenced in the torrent. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) sharing the actual files (not the torrent file but the actual files referenced in the .torrent file) using any BitTorrent client.

7. For example, a person interested in obtaining child pornographic images would open the BitTorrent website on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The results of the search are returned to the user's computer and displayed on the torrent site. The user selects a .torrent from the results displayed the file(s) he/she wants to download. Once the .torrent file is downloaded, it is used by a BitTorrent program which the user had previously installed. The .torrent file is the set of instructions the program needs to find the files referenced in the .torrent file. The file(s) is downloaded directly from the computer or computers sharing the file. The downloaded file(s) is stored in the area previously designated by the user and/or the software. The downloaded file will remain until moved or deleted.

8. One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user downloading an image file may actually receive parts of the image from multiple computers. The advantage of this is that it speeds up the time it takes to download the file.

9. A P2P file transfer is assisted by reference to an IP address. This address, expressed as four numbers separated by decimal points, is unique to the particular Internet connection being used by a particular computer during an online session. The IP address provides a unique location, making it possible for data to be transferred between computers.

10. The computer running the file sharing application, such as the BitTorrent application, has an IP address assigned to it while it is on the internet. BitTorrent users are able to see the IP address of any computer system sharing files to them or receiving files from them. Investigators log the IP address which has sent them files or information regarding files being shared. Investigators can then search public records that are available on the Internet to determine the ISP that has assigned that IP address. Based upon the IP address assigned to the computer sharing

files, subscriber information can be obtained from the ISP.

**PROBABLE CAUSE**

11. On or about August 6, 2026, the FBI Huntington, West Virginia Resident Agency initiated an Internet based investigation to identify persons possessing and participating in the trafficking of child pornography using peer-to-peer file sharing networks ("P2P").

12. During this investigation, investigators examined records from a law enforcement program used to monitor peer to peer downloads and located an IP address associated with a computer originally believed to be in the vicinity of Logan, WV[1], that had been previously identified through investigative processes as containing digital media files believed to be child pornography. This IP address was identified as 173.80.195.174 (hereinafter the "target IP address"). The program further indicated that the target IP address had been logged as possessing, via a P2P file sharing program, approximately 98 digital media files of suspected child pornography on June 5, 2026, between the hours of 06:43 AM and 12:32 PM UTC (02:43 AM and 08:32 AM EST). Included in the media files from this date was a media file with Hash Value

[1] The law enforcement program initially indicated that the subject IP address resolved to the Logan, WV area, but, as described in more detail below, upon service of an administrative subpoena, investigators learned that the IP address was associated with a Prestonsburg, KY address.

2A5AC0C7AC06AAB8FADD74E3224D5EC4.

13. The same program indicated that the target IP address had been logged as possessing, via a P2P file sharing program, approximately 7 digital media files of suspected child pornography on June 22, 2026, between the hours of 12:30 PM and 4:40 PM UTC (08:30 AM and 12:40 PM EST). Included in the media files from this date was a media file with Hash Value 569162103F5F366EB7B0DB3585A6EBFF.

14. The same program indicated that the target IP address had been logged as possessing, via a P2P file sharing program, approximately 196 digital media files of suspected child pornography on June 23, 2026, between the hours of 02:12 AM and 12:51 PM UTC (10:12 PM and 08:51 AM EST). Included in the media files from this date was a media file with Hash Value A71A81335D91A30CB9997602CBF0F6F6.

15. The videos described in paragraphs 13, 14, and 15 were all captured by the law enforcement tool used to monitor peer to peer downloads and were subsequently reviewed for content.

16. I reviewed three files associated with the above-mentioned hash values that were downloaded from the target IP address on June 5, 2026, June 22, 2026, and June 23, 2026, and determined, based upon my training and experience, that several of these files depicted child pornography as defined by 18 U.S.C. §

2256(8). Three of these video files are described below:

a. Hash 2A5AC0C7AC06AAB8FADD74E3224D5EC4: This video file is approximately 47 minutes and 35 seconds in length. The title displayed at the start of the video is "Jack h'off, Masked Girl Rides Again". This file depicts an unmasked pre-pubescent female approximately 7 to 10 years of age laying on her back on a bed completely naked with vagina exposed. The video then depicts the same pre-pubescent female wearing a mask covering the eyes and top half of face. The vagina is manually stimulated by an adult male while an adult female stimulates the anus with objects. At approximately 22:20 on the time bar, the adult male inserts his penis into the pre-pubescent female’s mouth while the adult female stimulates the vagina and anus. The adult male inserts his penis into the pre-pubescent female’s anus and appears to have intercourse with her. The video file cuts to approximately 30 seconds remaining and depicts the pre-pubescent female laying naked on her back on a bed, with the adult male over top of her ejaculating on the pre-pubescent female’s body and face.

b. Hash Value 569162103F5F366EB7B0DB3585A6EBFF: This video file is approximately 3 hours, 54 minutes in length. The title displayed at the beginning of the video is "PEDOBOYS- VOLUME #1". The file name is saved as "Pedoboys Compilation Volume #1”, with a still photo depicting a naked pre-pubescent male, approximately 8 to 12 years of age with an adult male’s penis in his mouth, while a second adult male stands behind the pre-pubescent male with an erect penis. The first video depicts an adolescent male, approximately 12 to 14 years of age in a green shirt laying on his back with his anus and penis exposed. An adult male inserts his penis into the adolescent male’s anus and appears to have intercourse with the adolescent male. The video file skips to approximately 57:20 on the time bar and depicts a fully clothed, appearing to be an adolescent or pre-pubescent male approximately 12 to 14 years of age, sucking the penis of another male while fully clothed with the penis fully visible. The video file skips to approximately 1:08:48 on the time bar and depicts a naked adolescent male, approximately 15 to 17 years of age bent over spreading his buttocks to expose his anus to the camera. The adolescent male then turns onto his back

and manually stimulates his penis. A male climbs on top of the adolescent male and inserts his penis into the adolescent male's mouth. The final video in the compilation depicts two males fully naked on a couch with both penises exposed. A pre-pubescent male is bent over on the arm of the couch, approximately 8 to 12 years of age, while the other adolescent male, approximately 12 to 15 years of age, inserts his penis into the pre-pubescent male's anus and appears to have intercourse with the pre-pubescent male.

c. Hash value A71A81335D91A30CB9997602CBF0F6F6: This video file is approximately 10 minutes and 35 seconds in length. The video depicts a close-up camera view of what appears to be an adult male inserting his penis into what appears to be a pre-pubescent female vagina. The video file cuts to a pre-pubescent female conducting oral sex with the vagina of another pre-pubescent female while sitting in a chair. One of the pre-pubescent females is clothed, while the other is clothed on the top half, with the vagina exposed. The pre-pubescent females' both appear to be approximately 6 to 10 years of age. The video file cuts to a close-up camera view of what appears to be an adult male inserting his penis into a pre-pubescent females vagina and appears to have intercourse with the pre-pubescent female.

17. On August 6, 2026, law enforcement determined that the target IP address was issued to the Optimum Internet Service Provider.

18. On August 12, 2026, investigators served an administrative subpoena on Optimum Internet Service seeking subscriber information for the customer who was assigned the target IP address on August 5, 2026, which was the same IP address from the above mentioned downloads. Law enforcement programs indicated that the target IP address had been logged as possessing, via a P2P file sharing program, approximately 55 files believed to be

child pornography on August 5, 2026. The subpoena response from Optimum identified the subscriber of the target IP address on August 5, 2026, as "Jimmy Brown," with a service address of the SUBJECT PREMISES. The response indicated service dates of March 20, 2026 to present.

19. On August 25, 2026, law enforcement obtained a background report on BROWN. This report included information from commercial and government sources. This report indicated that BROWN likely resided at the physical address of the SUBJECT PREMISES.

20. On August 25, 2026, law enforcement obtained Department of Motor Vehicle records on BROWN. BROWN was issued a Kentucky non-driver's license ID, ID number B12-34-8372, with an issue date of March 27, 2026. The listed physical address on the ID was the SUBJECT PREMISES.

21. On September 2, 2026, law enforcement documented and photographed the physical description of the premises at 120 CLIFFSIDE CIR APT 38, PRESTONSBURG, KY 41653. The residence at these premises was observed to be a two-story, multi-family residence with brick walls, tan siding, with a brown roof located on 120 CLIFFSIDE CIR.

22. On September 3, 2026, at the request of FBI Huntington Agents, Postal Inspector Seth Summers conducted a search of United States Postal Service (USPS) databases and business records relating to 120 Cliffside Circle, Apt. 38, Prestonsburg, KY 41653-1866, and the name Jimmy Brown, which revealed that packages with the recipient's name listed as Jimmy Brown were destined and/or delivered to the address between on or about September 11, 2024, to on or about September 1, 2026.

23. On September 1, 2026, law enforcement checked the law enforcement database for most recent child exploitation material from the target IP address and identified that the target IP address had been logged as possessing suspected child pornography on September 1, 2026. This activity consisted of approximately 93 files of suspected pornography exchanged on the P2P network between 10:04 AM – 4:00PM UTC (06:04 AM – 12:00 PM EST).

24. Including the most recent activity on September 1, 2026, the target IP has been logged as possessing suspected child pornography across approximately 1,833 instances between the date range of May 23, 2026 to September 1, 2026.

25. On September 9, 2026, law enforcement executed a residential search warrant of JIMMY RAY BROWN's apartment, located at 120 Cliffside Circle, Apt. 38, Prestonsburg, KY 41653-1866, in

reference to the above-mentioned criminal investigation of child pornography.

26. While on scene of the search warrant, law enforcement conducted a digital forensic preview examination of BROWN's desktop computer located in BROWN's bedroom. BROWN provided officers with the password for the device, and a forensic examiner conducted the review. Law enforcement reviewed files on the computer and noted several items of evidentiary value to be CSAM.

27. Specfically, during the preview, law enforcement noted the following files. These files were found in the "downloads" folder of the computer in subfolders "emule"(a peer-to-peer file sharing network that utilizes the internet) and "incoming". Based on my training and experience, that is indicative of files downloaded from the internet:

a. File 1 – a video of unknown length titled "Tied and Tickled – Omegle – Tropical Cutie – Opva – PTHC C-137 – Rabbit Girl 7yo 11yo. The thumbnail of the video depicts a prepubescent female with a penis in her mouth.

b. File 2 – a video file that is approximately 13 minutes and 22 seconds long. The video is titled "(PTHC) t-219490308 – Gay – 2 Young Boys Lovers (14yo) (32min32) Kdv Pjks00 Hmv Rbv Preteen Gerbys- Two 13yo boys fuck on

sofa.mpg. The thumbnail depicts two adolescent males on a sofa with no shirts on.

28. All of the above facts and circumstances taken together lead the affiant to believe that there is probable cause to believe that JIMMY RAY BROWN possessed child pornography, based on the images recovered from BROWN’s device.

**CONCLUSION**

29. I submit that this affidavit supports probable cause to find that JIMMY RAY BROWN violated 18 U.S.C. § 2252(a)(4)(B), (“possession of child pornography”).

Respectfully submitted,

/s/ Zachary Yommer w.p.b Hanly A. Ingram

ZACHARY YOMMER
Special Agent
FEDERAL BUREAU OF INVESTIGATION

Subscribed remotely per Rule 4.1(b)(2)(A) on September 9, 2026.

____________________________________
Hanly A. Ingram
UNITED STATES MAGISTRATE JUDGE